UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANERIO WEST,

    Plaintiff,

v

WAYNE COUNTY, a political subdivision,

    Defendant.

Civil Action No.:
Honorable

_____

JAMES B. RASOR (P43476)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax
_____

## COMPLAINT & JURY DEMAND

NOW COMES PLAINTIFF, JANERIO WEST, by and through his attorneys, Rasor Law Firm, PLLC, and for his Complaint against Defendant Wayne County:

## GENERAL ALLEGATIONS

### Parties

1. At all relevant times, Plaintiff Janerio West, was a resident of the City of Southfield, County of Oakland, State of Michigan.

2. Defendant Wayne County is a political subdivision located within the Eastern District of Michigan.

1

3. At all material times, Plaintiff was an employee of Defendant within the Wayne County Sheriff's Department.

4. This lawsuit arises out of events occurring within the City of Detroit, County of Wayne, and State of Michigan.

## Jurisdiction and Venue

5. This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

6. This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C. §§ 1331, 1343. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

7. Defendant is a covered entity, which includes "employer[s]" within the meaning of the ADA and an "employer" within the meaning of the PWDCRA, MCL §37.1201(b).

8. The amount in controversy exceeds $75,000.00 exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

9. Venue is appropriate in this Court pursuant to 28 USC §1391(b), as this cause of action arises out of occurrences that took place within this District in the County of Wayne and Defendant transacts and conducts business within this District.

<u>**Administrative Procedures**</u>

10. Plaintiff filed a charge with the EEOC based on disability on March 14, 2024.

11. The EEOC issued Plaintiff a Right to Sue letter on September 23, 2025.

12. Plaintiff has satisfied all jurisdictional requirements set forth by the EEOC for bringing federal causes of action as addressed below.

## COMMON FACTUAL ALLEGATIONS

13. Plaintiff was hired by Defendant as a Sheriff Deputy on or around September 18, 2023.

14. During the hiring process Plaintiff went through an extensive background check where he divulged his disability but was medically cleared for duty by Defendant.

15. On or about October 6, 2023, Plaintiff's supervisor, Capt. Kevin O'Rourke, wrote a memorandum to Chief Dunlap detailing his concerns and recommendations regarding Plaintiff as it pertains to his Post-Traumatic Stress Disorder disability.

16. On or about October 11, 2023, Defendant requested that Plaintiff participate in a Fitness for Duty Assessment, stating they had concerns regarding Plaintiff's ability to perform the essential functions of his job duties.

17. Plaintiff successfully completed the Fitness for Duty Assessment demonstrating his capacity to effectively perform the job.

18. Counselor Laura Segal conducted an evaluation, and on or around October 13, 2023, she informed Plaintiff that she notified the employer: "I do not see Janiero posing a threat to himself or anyone else at this time. He is verbal of an awareness of the need to practice restraint and be in better control of his thoughts, actions and behaviors. He feels he is getting a lot of support/reinforcement from his church and pastor in this regard and plans to continue to do so. I think he is able to return to training at this time with the recommendation that he continue to be monitored there (as I am sure he will be) and that he continue to see me for the next 4 sessions authorized so that I can help monitor and support him to help ensure his success in the program and beyond."

19. On or about October 18, 2023, Defendant was notified by a Counselor at Health Management Systems of America (HMSA), Mackenzie Zalucki, that it was recommended that Plaintiff attend four additional employee assistance program sessions, or, if the employer elected to allow Plaintiff to return prior to the completion of said sessions, that Plaintiff should continue to be monitored.

20. The recommendations flowing from the EAP evaluation process were requests for accommodations: further EAP sessions and/or monitoring.

21. Despite having prior knowledge from the Defendant's hiring process of his disability and the recommendation made by the counselor on or about October 18, 2023, Plaintiff was terminated on or around October 26, 2023.

4

22. On or about March 14, 2024, Plaintiff filed a Charge of Discrimination in belief that he was terminated due to his disability in violation of the Americans with Disabilities Act of 1990, as amended.

23. On or about September 23, 2025, the EEOC issued a Determination and Notice of Rights to Sue.

24. Upon information and belief, Defendant's employees were not trained on the ADA's requirements.

25. Defendant's explanation for terminating Plaintiff is facially discriminatory: Defendant, despite evidence to the contrary, assumed that Plaintiff was unable to perform the job due to his perceived disability.

26. Instead, Defendant abruptly terminated Plaintiff based on alleged performance issues that were directly linked to his disability, PTSD.

27. Because Defendant lacks ADA policies and procedures—and in turn employee training regarding the same—maintains a facial policy of "no accommodations" and failed to engage in any interactive process that would have determined Plaintiff's abilities, Defendant violated the ADA in terminating Plaintiff.

28. This is corroborated by the EEOC's determination that Defendant failed to provide Plaintiff with reasonable accommodation, failed to engage in any interactive process, and terminated Plaintiff based on his disability/perceived disability.

## COUNT I

## VIOLATION OF 42 U.S.C § 12101, *et seq.*, OF THE AMERICANS WITH DISABILITIES ACT—DISCRIMINATION AND FAILURE TO ACCOMMODATE

29. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 28, as if fully set forth herein.

30. Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, prohibits discrimination against any qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

31. 42 U.S.C. § 12111(8) defines qualified individual to mean an individual who with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires.

32. At all relevant times, Plaintiff, who is suffering from Post-Traumatic Stress Disorder (PTSD), was a qualified disabled individual within the meaning of 42 U.S.C. § 12111(8), and further, qualifies as a disabled person because Defendant regarded him as being disabled.

33. Plaintiff could perform his job duties with, or without, a reasonable accommodation.

34. 42 U.S.C. § 12112(b) defines discrimination against a qualified individual on the basis of disability. It includes the following:

6

  a. 42 U.S.C. § 12112(b)(3) includes in the definition of discrimination utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability.

  b. 42 U.S.C. § 12112(b)(5) includes in the definition of discrimination the failure to reasonably accommodate a qualified individual with a disability.

  c. 42 U.S.C. § 12112(b)(6) includes in the definition of discrimination the use of qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with a disability unless it is shown to be job related for the position in question and consistent with business necessity.

35. The Defendant employer further discriminated against Plaintiff by ascribing to him an inability to perform the functions of the job because of a medical condition, when in fact, he was able to meet the jobs duties.

36. A reasonable accommodation under the ADA includes "job restructuring…reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations[.]" 42 U.S.C. § 12111(9).

37. The ADA also requires an individualized inquiry into each individual employee's specific situation and need for accommodation and accommodating such a request unless the request poses an undue hardship.

38. To determine the reasonableness of an accommodation, the ADA's regulations indicate that "it may be necessary for the [employer] to initiate an

7

informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

39. Defendant violated the ADA when it discriminated against Plaintiff based on his disability and/or perception as disabled, refused to allow him to complete his training, and terminated him.

40. Defendant discriminated against Plaintiff by enforcing its facially discriminatory policies regarding individuals perceived as disabled and by failing to engage in an interactive process as required by the ADA.

41. By ignoring ongoing discrimination and enforcing discriminatory policies against Plaintiff, Defendant disregarded Plaintiff's basic rights under the Americans with Disabilities Act.

42. Defendant's actions and policies in discriminating against Plaintiff based on his disability were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

43. Given Defendant's basis for terminating Plaintiff, Plaintiff has direct evidence of discrimination.

44. Instead of engaging in an interactive process to determine what job(s) Plaintiff could perform or any reasonable accommodations which could be made, Defendant abruptly terminated Plaintiff based on his disability/perceived disability.

45. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

46. Pursuant to the ADA, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff Janerio West respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, for compensatory damages in whatever amount he is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, punitive damages, and an award of his fair and reasonable attorney fees, cost of litigation, and interest.

## COUNT II

### VIOLATION OF M.C.L. § 37.1101, *et seq.*, THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — DISCRIMINATION

47. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 46, as if fully set forth herein.

48. The Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.*, ("PWDCRA") prohibits the discharge or otherwise discrimination against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

49. A disability is "[a] determinable physical or mental characteristic of an individual which may result from disease, injury, congenital conditions of birth, or functional disorder, if the characteristic ... substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion." M.C.L. § 37.1103(d)(i)(A).

50. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the PWDCRA. Specifically, Plaintiff has Post Traumatic Stress Disorder.

51. Plaintiff was qualified for the position he was hired for and held and could perform the essential job duties of a Sheriff Deputy with or without a reasonable accommodation.

52. Defendant violated the PWDCRA when it discriminated against Plaintiff on the basis of his disability and/or his perceived disability.

53. Defendant treated Plaintiff, because of his disability, more harshly than it treated other similarly-situated employees and upon information and belief, this was at least in part motivated by discrimination.

54. Defendant's actions were intentional and in disregard of Plaintiff's rights and sensibilities.

55. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

56. Defendant did not engage in any interactive process to attempt to accommodate him, if necessary, or to determine Plaintiff's ability to perform the job with or without an accommodation.

57. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the PWDCRA.

58. As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

59. Pursuant to the PWDCRA, Defendants are liable to Plaintiff for all damages allowed under state law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

Respectfully submitted,

RASOR LAW FIRM, PLLC

*James B. Rasor*
James B. Rasor  (P43476)
Attorney for Plaintiff
201 E. 4th Street
Royal Oak, MI 48067
248-543-9000
Jbr@rasorlawfirm.com

Dated: December 22, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANERIO WEST,

    Plaintiff,                                       Civil Action No.:
                                                            Honorable

v

WAYNE COUNTY, a political subdivision,

    Defendant.

_____

JAMES B. RASOR (P43476)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI 48067
248/543-9000 // 248/543-9050 fax
_____

## JURY DEMAND

NOW COMES Plaintiff, Janerio West, by and through his attorneys, Rasor Law Firm, PLLC, by James B. Rasor, and hereby demands a trial by jury in the above-captioned cause of action.

                                                    Respectfully submitted,

                                                    RASOR LAW FIRM, PLLC

                                                    *James B. Rasor*
                                                    JAMES B. RASOR (P43476)
                                                    Attorney for Plaintiff
                                                    201 E. 4th Street
                                                    Royal Oak, MI 48067

Dated: December 22, 2025